# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL V. LEGGINS,<br><br>Petitioner,<br><br>vs.<br><br>DAVID DUNCAN,<br><br>Respondent. | No. CV-09-362-TUC-CKJ (CRP)<br><br>**REPORT AND**<br>**RECOMMENDATION** |

Michael Leggins ("Petitioner"), presently an inmate at the Federal Correctional Institution in Safford, Arizona ("FCI Safford"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241 ("Habeas Petition") on June 29, 2009. (Doc. 1). Petitioner alleges the Federal Bureau of Prisons ("BOP") violated his due process rights when it classified him with a "greater security" management variable without providing him with notice, a hearing, or an opportunity to defend against the allegations supporting the classification. (Doc. 1, pp. 4, 9).[1] A classification of "greater security" denies Petitioner the ability to participate in furloughs, work release, and other community-based rehabilitative programs. (Doc. 1, p. 11). The Government contests the Habeas Petition, arguing Petitioner

---

[1] The pincites provided refer to the pagination on the Court's electronic case management system, CM/ECF.

is not entitled to a due process hearing on classification decisions and that inmates may challenge their custody classification through administrative remedies, which Petitioner did. (Doc. 7, pp. 5-6). Petitioner replied to the Government's answer, arguing (1) federal regulations show he is entitled to notice and a hearing prior to classification decisions and (2) his access to administrative remedies does not cure the violation of his due process rights. (Doc. 8).

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is in federal custody following his conviction for felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a) and (b). (Doc. 7-1, p. 8). Petitioner was sentenced on February 12, 2007 to 120-months, followed by 5 years of supervised release. (Doc. 7-1, p. 8). He is projected to be released on June 12, 2015 via Good Conduct Time Release.[2] (Doc. 7-1, p. 2).

After commitment to FCI Safford, in November 2007, BOP determined Petitioner's security level through its classification system. (*See* Program Statement 5100.08, September 12, 2006, Doc. 7-2). During classification, Petitioner received a seven-point increase in his base score because the severity of his current offense was listed as "GREATEST". (Doc. 1, p. 24). Petitioner appealed the seven-point increase through the BOP's administrative process. (Doc. 7-1, p. 10). Petitioner's counselor Hernandez and his Unit Manager Barbara Beal informed him Program Statement 5100.08 authorized BOP to increase his base score because (1) Petitioner was convicted for felon in possession of a firearm and possession with intent to distribute cocaine base; (2) Petitioner brandished and threatened to use a handgun during commission of the offense; and (3) during his arrest, Petitioner possessed cocaine and

---

[2] The facts in this paragraph derive from the Declaration of Matthew J. Carney, Supervisory Attorney Advisor for the Federal Bureau of Prisons and the attached Inmate History. (*See* Doc. 7-1, pp. 2-3, 4-8). Documents from the original criminal record were not provided to the Court.

marijuana and told law enforcement officers that he was a drug dealer and possessed the shotgun for protection. (Doc. 1, pp. 17-18).

Petitioner appealed this decision to the Warden. In the appeal, Petitioner pointed out the gun he brandished was a toy gun. (Doc.7-1, p. 11). In denying his appeal, the Warden first noted Petitioner's convictions fell under a category of Greatest Severity. The Warden then noted in the pre-sentence report Petitioner was described as getting into a dispute with the victim, going outside to his vehicle to retrieve a handgun, displaying the handgun, pointing it at the victim, and following the victim back inside the store with the gun still pointed at the victim. (Doc. 7-1, p. 12). The Warden found Petitioner's behavior in the commission of the crime also resulted in a public safety factor of greatest severity. (Doc. 7-1, p. 12).

Petitioner appealed the Warden's decision to the regional director. The regional director rescored Petitioner's offense level to moderate but did note Petitioner brandished and threatened to use a handgun against the victim. (Doc. 7-1, p. 14). Unsatisfied with the regional director's decision, Petitioner appealed that finding to Harrell Watts, the National Inmate Appeals Administrator. (Doc. 7-1, p. 15). Petitioner claimed the regional director's rescoring of Petitioner's offense severity was an admission by the BOP that it "breach[ed] [the] plea agreement." (Doc. 7-1, p. 15).

Responding to Petitioner's appeal, the national administrator cited Program Statement 5100.08 for authority to "allow[] staff to use professional judgment in making decisions involving custody classification matters." (Doc. 7-1, p. 16). The national administrator noted the BOP's classification of Petitioner did not relate to any plea agreement he reached with the U.S. Attorney's Office. (Doc. 7-1, p. 16). The administrator also noted Petitioner's offense severity was rescored from a seven to a three because Petitioner's behavior leading to his arrest, including his brandishing of the gun and threatening the use of it against victim was behavior "not considered part of the Federal offense." (Doc. 7-1, p. 14). Because brandishing the weapon and threatening to use it was "found to be indirectly related to the offense conduct for which [Petitioner was] sentenced

- 3 -

. . . it was not considered in [Petitioner's] most recent classification score." (Doc. 7-1, p. 16).

After the regional director lowered Petitioner's offense severity score from a seven to a three, staff at Petitioner's prison facility requested the Designation and Sentence Computation Center ("DSCC") assess Petitioner's case to determine whether to place a Greater Security Management Variable ("MGTV") on Petitioner's custody classification. (Doc. 7-1, p. 20). The DSCC determined a MGTV was appropriate. (Doc. 7-1, p. 20). Petitioner learned of the MGTV placement on his custody classification in a May 3, 2008 meeting with Unit Counselor Scott Warner. (Doc. 1, p. 19). Petitioner's MGTV was based on past criminal behavior that resulted in arrests but not convictions. Petitioner appealed the placement of the MGTV on his custody classification. (Doc. 1, p. 19).

In his Request for Administrative Remedy, Petitioner asked BOP to specify what "other offenses" were used to justify placement of the MGTV. Unit Manager Barbara Beal listed four events in Petitioner's criminal history that supported the MGTV: (1) arrest for assault with a deadly weapon, not a firearm on October 24, 1986 (case was rejected for prosecution as the complainant refused to prosecute); (2) arrest for an attempt to mobilize an immobilized vehicle on June 7, 1991 and failure to appear in that case (case was eventually dismissed); (3) arrest for assault with a deadly weapon, not a firearm; urge riot or destroy property (including yelling "Fuck the Police! Riot Again" and telling officers "Fuck you, Pussy! Mother Fuckers! I don't have to do a fucking thing you say. I'm outta here!"), battery, and resisting a peace officer on August 30, 1992; (4) arrest for battery on spouse on March 18, 2006 (no charges filed; victim was heard crying and yelling "You are punching me in the stomach! Stop hitting me!" Victim later said Petitioner had also called her a "bitch" and punched her in the face); and (5) brandishing and threatening to use a handgun, later determined to be a replica, against a victim (which included retrieving the replica gun from his car and following the victim back into the store with the gun pointed at the victim). (Doc. 1, pp. 20-21). The Unit Manager acknowledged most of the above cases resulted in dismissal but stated the MGTV was appropriate because the above

incidents showed "[Petitioner's] characteristic of the behavior during the arrests . . ." (Doc. 1, p. 21).

Petitioner appealed the decision of the Unit Manager. The regional director found a Greater Security MGTV was properly applied to Petitioner's custody classification. (Doc. 7-1, p. 20). The regional director determined Petitioner's MGTV classification was based on security concerns not reflected in Petitioner's classification, specifically the prior arrests. (Doc. 7-1, p. 20). The national appeals administrator also denied Petitioner's appeal. (Doc. 7-1, p. 23). The national administrator noted Program Statement 5100.08 requires staff use professional judgment in making decisions involving custody classification and that MGTVs are applied when staff determine an inmate's demonstrated security needs are inconsistent with the results of the classification process. (Doc. 7-1, p. 23).

On June 29, 2009, Petitioner filed his Habeas Petition pursuant to 28 U.S.C. § 2241. Petitioner contends his due process rights were violated when BOP denied him prior notice and a hearing regarding his custody classification and the subsequent addition of an MGTV to his custody classification. The Government contends Petitioner is not entitled to a due process hearing on classification decisions because (1) custody classification procedure is within the discretion of the Attorney General as delegated to the Director of the BOP; and (2) the classification procedures developed by BOP are nothing more than guidelines for determining the security and custody needs of an inmate, while the ultimate judgment is to be based on professional judgment of the staff. (Doc. 7, pp. 3-4).

## II. DISCUSSION

### A. Jurisdiction

Federal prisoners challenging the manner, location, or conditions of the execution of a sentence properly bring their claims pursuant to a writ of habeas corpus under 28 U.S.C. § 2241. *Brown v. United States*, 610 F.2d 672, 677 (9th Cir.1990). To obtain relief under 28 U.S.C. §2241 a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner. *Clark v. Floyd*, 80 F.3d

371, 372, 374 (9th Cir.1996) (contending time spent in state custody should be credited toward federal custody). A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian. *Brown*, 610 F.2d at 677.

In this case, Petitioner challenges the application of a MGTV to his custody classification in violation of his right to due process. The MGTV prevents Petitioner from participating in community based rehabilitative programs. Petitioner is challenging the legality of the manner in which his sentence is being executed. Thus, his petition is proper under 28 U.S.C. §2241. This Court has territorial jurisdiction over the case in question since Petitioner is incarcerated at FCI Safford, which is within the District of Arizona.

### B. Exhaustion

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir.1986). The Government concedes Petitioner has exhausted his available administrative remedies. (Doc. 7, p. 2; *see also* Doc. 7-1, Exhibit 1, pp. 2-3).

### C. Merits

### 1. Classification of Inmates and Program Statement P5100.08

Congress authorizes federal correctional institutions to develop a classification system that segregates inmates based on "the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions." 18 U.S.C. § 4081. The Attorney General is vested with the control and management of Federal penal and correctional institutions. 18 U.S.C. § 4001(b)(1). As part of the authority, the Attorney General may classify inmates and provide for their proper government, discipline, treatment, care, rehabilitation, and reformation. 18 U.S.C. § 4001(b)(2). The Attorney General authorizes the Director of the Bureau of Prisons

"to exercise or perform any of the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment of persons . . ." 28 C.F.R. § 0.96. The BOP is responsible for designating a federal inmate to a penal or correctional facility and for making any subsequent transfers. 18 U.S.C. § 3621(b). The BOP classification procedure is within the discretion of the Attorney General as delegated to the Director of the Bureau of Prisons. *See* 18 U.S.C. § 4081; 28 C.F.R. § 0.96; *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (*dicta*).

The BOP's policy and procedures for classifying inmates are set forth in the *Inmate Security Designation and Custody Classification Manual*. The *Manual* is referenced as Program Statement ("PS") 5100.08.[3] The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines. (Doc. 7-2, p. 2).

The classification procedure involves consideration of various factors to determine the proper security and custody classification. These factors include severity of the current offense, length of the current sentence, criminal history, history of violence, history of escape and escape attempts, number and type of detainers, involvement with drugs and alcohol, mental or psychological stability, institutional adjustment and responsibility. (Doc. 7-2, Exhibit 2). An inmate's custody classification is determined when he enters BOP custody (within seven months upon arrival at the institution). (Doc. 7-2, p. 2). The custody classification is re-calculated annually during the inmate's institutional Program Review. (Doc. 7-2, p. 2).

Classification of inmates includes designating points for the various above-mentioned factors. (Doc. 7-2, pp. 4-16). The factors are divided into a "base score" addressing the inmate's offense severity and criminal history and a "custody score" addressing the inmate's institutional behavior. (Doc. 7-2, pp. 10, 15). The custody score is then adjusted up or down to determine the custody variance score. Together, the base

---

[3] Respondent provided the Court with copies of the relevant chapters, Chapters Five and Six, of Program Statement 5100.08. The Court cites these documents and pincites as they appear on the Court's electronic case management system, CM/ECF.

score and custody variance score create an inmate's "security score". (Doc. 7-2, p. 16). This score along with any applicable public safety factors determine an inmate's "scored security level". (Doc. 7-2, p. 16). That security level indicates the level of supervision required for an inmate and ultimately effects where an inmate can be housed and what programs are available to the inmate.

BOP also has the option of adding a third "score" to the classification analysis. (Doc. 7-2, p. 17). When the resulting "scored security level" of an inmate does not reflect the inmate's assessed security needs, a management variable can be added to the inmate's classification. *See* Chapter 5 of PS 5100.08 (Doc. 7-1, p. 26). A management variable overrides the inmate's scored security level. (Doc. 7-2, p. 17). A management variable can effect placement at either a higher security or lower security institution than the scored security level indicates. (Doc. 7-1, p. 25). Application of a management variable requires review and approval by the Designation and Sentence Computation Center ("DSCC") located in Grand Prairie, Texas. (Doc. 7-1, p. 25). Prison staff must complete a written request asking DSCC to review an inmate's file and apply a management variable. (Doc. 7-1, p. 25). There are various management variables; specific to this case, a "V" management variable represents "Greater Security" and applies when "[t]here may be security concerns which are not adequately reflected in the classification scheme." (Doc. 7-1, p. 29). A greater security management variable can only be assigned to an inmate's classification for up to twenty-four months. (Doc. 7-1, p. 31). Staff must apply again to the DSCC and an inmate must be reevaluated to update an expiration date for a management variable. (Doc. 7-1, p. 25).

### 2. Petitioner's Due Process Claim

Petitioner alleges the BOP violated his due process rights when prison officials assigned him a management variable of greater security ("MGTV") without notice, a hearing, and the opportunity to present a response. The Court finds the BOP was not required to provide Petitioner with any notice, a hearing, or an opportunity to be heard prior to classifying him with a MGTV.

In *Moody v. Daggett*, the Supreme Court noted *in dicta* that prisoner classification and eligibility for rehabilitative programs in the federal system are matters delegated by Congress to the "full discretion" of federal prison officials. 429 U.S. at 88 n. 9. Inmates do not have "legitimate statutory or constitutional entitlement sufficient to invoke due process" regarding their classification. *Id*. Similarly, the Supreme Court held the transfer of a state prisoner to a less favorable institution without an adequate fact-finding hearing does not in itself deprive the prisoner of liberty without due process of law. *Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Meachum*, the Court expressed concern that finding a liberty interest in the transfer of prisoners would trigger procedural protections of due process that "would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Id*. The Court was "unwilling to go so far" as to find a liberty interest when transfers between institutions are made for a variety of reasons including institutional security or the safety and welfare of the inmate. *Id*. The Ninth Circuit also held that prisoners have no constitutional right to a particular classification status. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir.1987) (*citing Moody*, 429 U.S. at 88 n. 9). In *Hernandez*, the prisoner brought a § 1983 action alleging state prison officials improperly classified him based on false statements in his file without giving him due process to argue against those statements. *Id*. The Ninth Circuit disagreed; holding Petitioner did not have a due process right in his classification status nor was he deprived of liberty by the presence of challenged statements in his record. *Id*.

The assignment of an MGTV to Petitioner's custody classification does not create a liberty interest entitling Petitioner to procedural protections of due process. Congress and the Attorney General gave the BOP wide discretion to create and maintain a classification system. The BOP created Program Statement 5100.08 as a guideline for classifying inmates. Prison officials complied with P.S. 5100.08 in classifying Petitioner. The fact that Petitioner cannot access community based rehabilitative programs at a lower security prison because he is in a higher security prison does not in itself create a liberty interest requiring

the BOP to provide him procedural protections of due process prior to classifying him. BOP followed the guidelines outlined in Program Statement 5100.08 in classifying Petitioner with a MGTV; BOP's use of its congressionally-mandated discretion to classify Petitioner does not first require BOP to provide Petitioner with any due process.

In support of his claim, Petitioner cites a non-binding Second Circuit case, *Cardaropoli v. Norton*, 523 F.2d 990 (2nd Cir.1975). In *Cardaropoli*, the Second Circuit held a petitioner was entitled to some procedural protections of due process before the BOP could designate him as a "special offender". *Id*. at 994-995. The program statement in effect set forth eight broad categories for special offenders including non-federal prisoners, members of organized crime, protection cases, extreme custody risks, subversives, notorious individuals, persons who have threatened high government officials, and any other offender who requires 'especially close supervision.'" *Id*. at 993. In reaching its conclusion that some due process was required before designating an inmate as a "special offender", the Second Circuit noted the consequences of a "special offender" designation were significant and could include delays or preclusion of social furloughs, release to half-way houses and transfers to other correction institutions and a possible bar on early parole. *Id*. at 994. Significant to the court was the total or partial loss of eligibility for substantial benefits normally afforded every inmate. *Id*. at 995, n. 11. The court in *Cardaropoli* specifically distinguished the "special offender" classification from other classifications, including the security risk classification of "maximum", "medium", or "minimum", because "special offender" classification cannot be mitigated or removed by reason of the inmate's subsequent behavior. *Id*.

*Cardaropoli* is not binding on this Court and it also addresses a designation "special offender" that is not at issue in this case. Unlike the "special offender" designation, Petitioner's classification as an MGTV has an expiration date. Under Program Statement 5100.08, Petitioner's classification as an MGTV expires after twenty-four months and prison staff must reapply to the DSCC Administrator to reevaluate the case if they seek further MGTV classification. (Doc. 7-1, Exhibit 1, Attachment 4, pp. 26, 31). Also

different, the designation of MGTV does not result in the loss of eligibility for benefits afforded to other inmates. An MGTV does effect where Petitioner falls in the classification system but it is not a separate designation that places him outside the classification system. An MGTV classification is closer to the classification of "maximum", "medium", or "minimum" custody identified by the Second Circuit as distinguishable from the "special offender" designation. *Cardaropoli* is not binding on this Court and is also distinguishable from this case.

In his Reply, Petitioner alleged BOP classified him in violation of the procedure prescribed by 28 C.F.R. §524.11(b)(1). This Court finds no violation of this procedure took place. After the initial classification, inmates receive a program review at least once every 180 calendar days. 28 C.F.R. § 524.11(a)(2). When an inmate is to appear before a classification team, the inmate receives a 48-hour notice of the scheduled appearance. 28 C.F.R. § 524.11(b). Petitioner confuses 28 C.F.R. § 524.11 to mean he must receive notice before any change in his classification. This is an incorrect reading of the regulation. Petitioner need only receive 48-hour notice prior to a meeting at which Petitioner is scheduled to appear before a classification team. Prison staff were not required to provide Petitioner with notice or a hearing prior to requesting DSCC apply an MGTV to Petitioner's custody classification.

## III. RECOMMENDATION.

Based on the above, the Magistrate Judge recommends that the District Court, after its independent review and analysis, enter an order DENYING Petitioner's Habeas Petition with prejudice.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within fourteen (14) days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **No. CV-09-362-TUC-CKJ.**

The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner and counsel for Respondents.

DATED this 27th day of August, 2010.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE